Our final case for today is 22-1872, Naterra International v. Bensalem. Mr. Hernandez? May it please the Court, Miguel Hernandez for Appellant Naterra. The Board considered nine of the 13 DuPont factors and found that five were neutral. Of the remaining four factors, the Board found that the marks were confusingly similar and that Baby Magic has a level of fame. For the remaining two factors, the Board found that the trade channels and the goods weighed against confusion. However, there is undisputed evidence to the contrary. Applying this Court's precedent to the cited factors requires a de novo review and reversal of the Board's decision. Turning to the similarity of the marks, it's undisputed that each of the four criteria favors confusion. Further, Bensalem amplifies the confusion by emphasizing Baby's Magic significantly over the word T. You can find this on Appendix Page 29. Further, it is undisputed that Bensalem's mark incorporates the entirety of Baby Magic. This is important because this Court has explained that incorporating the senior user's mark in its entirety strongly favors confusion. Did the Board find that the similarity of the marks favored limited confusion? That's correct, Your Honor. Is your view that that one factor should be dispositive? It could be dispositive. However, I would like to emphasize that previous cases with these types of similarities of the marks have weighed heavily in favor of confusion, not just weighed somewhat in confusion. So, under de novo review, I would like to emphasize that this factor weighs heavily, if not dispositively. Can you point us to where in the decision you feel like the Board did not do a proper weighting with respect to that factor? On Appendix Page 29, I believe, the Board concluded that the marks were more similar than dissimilar. However, this type of language is insufficient to capture the near identical or identical criteria that these marks have. As you can see, the middle paragraph, the first factor weighs in favor of the likelihood of confusion. Do you want to move on to other factors? Yes, Your Honor. Moving to the fame of baby magic, it's undisputed that... Can you touch on Factor 3, the channels of trade? I believe that's a request for admission, but if you could talk to that next. Right, Your Honor. So, it's undisputed that there's evidence of Bensalem admitting that the parties have the same channels of trade. Now, the Board did not acknowledge or consider this fact in evidence. Further, it is undisputed that the parties sell their goods to the same consumers. This is important because this Court has explained that when parties sell their goods to the same consumers, it's an indication that the trade channels overlap. Do you find it at all amusing that you are three male attorneys arguing a case about whether or not consumers of baby products find the channel the same to three women who have seven children among them? It's not lost on me, Your Honor. Turning back to the trade channels, it's also undisputed that the parties sell these goods in the same stores. Accordingly, substantial evidence cannot support the Board's finding that this factor weighs against Natera. If anything, this factor must weigh in favor of Natera. If we were to agree with you, then what would happen? We'd have to send it back to the Board to make that assessment. I disagree, Your Honor. So, for the similarity of the marks in the fame of baby magic, sorry, I would like to point out one more thing about the fame. The Board never explicitly weighed this factor in favor of Natera. That is a legal error because in RECOT, this Board explained that when fame is present, its weight must be fully accorded. Should we interpret this factor as fame or just more of an assessment of the strength of the mark? And the Board said it was middle of the road. No, this is factor five. This is fame. As the Board explained and as we pointed out in our briefs, for likelihood of confusion, it's a spectrum. So, the Board found, and we accept for this appeal, that baby magic falls in the middle of that spectrum. It doesn't go towards the strength of a mark. That's a consideration the Board took in assessing where baby magic falls in the fame spectrum, but it's its own factor, Your Honor. So, turning back to your question, the similarity of the marks and the fame of the mark, that's de novo review. We have no issue with the Board's fact-fying. So, weighing those two factors alone is sufficient for this Court to reverse the Board's decision without remanding. You'd be happy with a vacay in remand though, wouldn't you? Yes, Your Honor. I acknowledge that, you know, remand, it's something. But again, there's no further factual finding. These two factors alone necessitate reversal. Now, turning back or turning to the goods, it's undisputed that there's evidence in the record showing other companies selling both parties' types of goods. Now, the Board erred in failing to consider this evidence, and this Court in Recaught explained that this exact type of testimony was extremely pertinent to whether the goods are related. Now, again, here, do you think, if we agree with you, that that testimony should have been considered, that evidence should have been considered, then don't we have to send it back to the Board to consider it in the first instance? I agree. I concede, Your Honor, that this factual finding would require a remand. However, the marks are so similar, and the presence of this fame weighs so heavily that this legal conclusion can only be likely to be a likely confusion. There's no need to send it back to the Board. So you're saying that we could just, even though you think you should prevail on that factor, and that that requires fact-finding by the Board, you'd be prepared to waive that. I'm not saying you have waived it, but you'd be prepared to waive it if we were amenable to the idea that weighing the likelihood of confusion, which is a question of law, these other two factors weigh so heavily in favor of you, we don't even have to get to that factor. That's correct, Your Honor. These two factors weigh so heavily, the Court wouldn't even need to get to that point. However, should the Court not feel as strongly, considering this factor would require reversal and remand, that's worst-case scenario. They can't remand is the worst-case scenario? Is that what you mean? That is our position. Okay. Anything further? Yes. I would like to emphasize that this Court has explained that if there's any doubt about confusion between the marks, it must be resolved in favor of the senior user. Here, if there's any doubt in your mind that there's confusion, it must be resolved in favor of Natera. You want to stay the rest of your time for rebuttal? If there's no further questions, Your Honor, I reserve the rest of my time for rebuttal. Mr. Sterling. Thank you. The appellant's appeal is based upon the claims of the trademark trial and really setting forth what specifically they ignored. It seems to be based upon the attorney's opinion, respectively. An issue here in the appeal, of course, is whether there's substantial evidence. Counsel, what about that factor three and the RFA response? Can you address that? So I believe you're specifically referring to channels of trade, Mary Arnold? Yes. So the key thing regarding channels of trade, and it's important to note, is especially with today's modern-day internet supermarkets, superstores that sell essentially everything, getting back to the 1970s, this Court's predecessor has found that simply because products are offered within the same marketplaces or stores does not automatically equate with those products being related. This is decades before the modern-day internet platforms. What about the RFA response? Can you address that in particular, sir? I think that the response speaks for itself. The appellant is not barred with what the response is. I don't understand, though. The Court found that Natera failed to show the goods are sold through similar channels, and yet you had actually admitted that they're sold through similar channels. How is that not an error on the Court's part? I'm simply saying that whether or not the Court found that or not is not the determination. The determination here is whether or not that factor weighs in favor of the appellant here. And in this case, you add up everything, and it does not weigh in favor of the appellant. Well, how do we—excuse me. Counsel? Yes, Your Honor. When you say you add up everything and you see whether it weighs in favor of the appellant, what are you talking about? Are you talking about adding up all the DuPont factors and seeing whether— Well, adding up all the DuPont factors, but that specific DuPont factor in dealing with the actual relationship of the actual goods themselves. I understand, but there was a—in response, it's factor three, similarity of trade channels, and both the parties agree that they're similar trade channels. So, how could we say—how could we say that the Board didn't err when it concluded that that factor weighs against the likelihood of confusion? In that case, even if the Board were to have found that there was a likelihood regarding the actual sales channels, that does not automatically establish that the goods themselves are similar or related. And that's really the DuPont factor that's an issue here. The key factor— Are you saying that goods themselves—are you talking about the similarity of goods factor now? Well, the similarity of goods factor and the actual trade norms themselves are going to be the two key considerations in any analysis. I—okay. I'm not following your argument, to be honest with you. I don't understand how you can—or what your argument is for saying that the Board did not err when it weighed—when it concluded that the similarity of trade channels weighed against the likelihood of confusion. So, maybe you need to explain that. Sure. Yes, Your Honor. What I'm arguing is that there's substantial evidence for the Board's decision. Regardless of whether you found that the Board erred or not on that, I'm simply saying that the analysis is harmless, even if you were to have found that there was an error in that case, in terms of the actual decision. There's substantial evidence to support the Board's decision that the trade norms themselves are dissimilar— Can you give me—what is that substantial evidence that you're saying is supporting the Board's decision on this factor three? I just want to focus on the trade channels in light of this RFA response. I just need to kind of see it, lay eyes on it. Give me something. I'm not making an argument with you. I think it speaks for itself. There's nothing to argue with what's on paper, Your Honor. It would be just injurious to argue against what's on paper. So, your argument—just to make sure we're all on the same page— your argument is, okay, yeah, maybe the Board did, in fact, mess up when it concluded that the similarity of trade channels weighed against likelihood of confusion here. But you're saying, put that to the side. There's still plenty of other evidence that supports the Board's ultimate conclusion on likelihood of confusion. Is that what you're saying? That's correct, Your Honor. I'm not making a finding that the Board erred or did not error. I'm just simply saying, if you were to have found that they erred on that factor, it's harmless in the actual analysis itself, based upon everything else in the actual record. Would you want to tell us what in the rest of the factors are that you think so strongly support the Board's decision? Yes, absolutely, Your Honor. In this case, there's really two key factors. One, the actual trademarks themselves. There's no disputing that the work we do in both parties' trademarks is descriptive. In that both products are for babies as far as what they're marketed for. In addition, there is substantial evidence in the record as to the sort of magic, both dictionary definition-wise, that it is suggestive of the characteristic of the actual goods themselves and that there's substantial use that the Board noted of the number of trademarks, both that are registered for similar goods to the appellant and in marketplace use. And so they do find that the trademark was conceptually weak as far as that goes and that it should not be afforded a certain amount of strength as I think the appellant is seeking for here. Additionally, when you look at the actual record itself, the appellant in both their briefs and today's are arguing as the analysis of fate. The appellant, of course, had the burden in this case in seeking to cancel my client's trademark in proving the actual fame of the trademark and for whatever reason, strategic or otherwise, chose not to make a record on certain evidence which may or may not have helped him in this case in terms of actual sales information, in terms of advertising information, and in terms of reputation of the actual trademark which the Board didn't recognize in this case was lacking. And when my colleague notes, for example, the RACO case, they noted billions of dollars in sales in that case. And when the Board and this Court has dealt with fame, it's typically something that they know has to be proven clearly. And it's something that oftentimes is dealing with those two things that in particular right there, both sales and advertising information. And other than self-circumstatements by the President of Antwerp, none of that information for whatever reason was provided in this case. And I think that weighed personally, I think that weighed heavily in the Board's decision in terms of the fact that they failed to prove that and that the trademark was actually conceptually weak as to why that factor was not seen as dispositive. Can I ask you about the third-party evidence on the similarity of goods, the existence of these third parties that sold goods that fell into both of the product categories and the registrations? Why is it that that's irrelevant? Shouldn't the Board have considered that? No, that's absolutely very relevant, and the Board did consider that. You think it did consider the third parties? The third party, yes, absolutely. I guess it considered it. It just said it was irrelevant. No, I don't see where it said it's irrelevant. It weighed that as a factor of the determination. It went through each of those trademarks separately and noted that that was a factor. I think that I'm pretty persuaded by the Pellon's argument that the similarity of the marks, especially given that they're just in blank script, is really, really very strong. I mean, baby's magic tea and baby magic, it seems like they're awfully, awfully similar. So why shouldn't they have been given more weight? Well, there's no dispute as to what you're saying, Your Honor. The key there is the conceptual strength of the actual trademark. And in this case, again, the trademark was made up of two words, baby. Yes, but you're arguing that as though you can somehow prove that the word baby magic is not distinctive. It is a registered trademark and therefore entitled to a presumption of distinctiveness. It absolutely is entitled to a presumption of distinctiveness. However, the word baby is disclaimed. So that is prime evidence of its descriptiveness, let alone its dictionary definition. And of course, this court and the board have found over and over that third-party evidence conceptually can weaken the strength of a trademark, which indeed in this case, and if you look at the Jack Wilson case, for example, this is on par with that for the number of actual trademarks that we're dealing with in this situation. And so I think that that was a key factor in the board's analysis in noting the weakness of the actual trademark. And when you look at the scale of trademarks going from descriptiveness to fanciful, that is a major consideration as to how much weight can be afforded to how much freedom you have to protect others from getting anywhere near your trademark. This is a case where the board specifically noted that the trademark is conceptually weak. What about the relatedness of the party's goods? Could you address that? I think, Your Honor, in this case, if it really comes down to that factor in its own being key, as it always is, the actual strength of the actual trademark itself in looking at the similarity between the two, there's no dispute that both trademarks contain the word magic and one contains baby and one contains baby. Would you give me a favor? Would you please address the relatedness of the party's goods? Absolutely. The relatedness of the party's goods in this case is such that the board did not find that they were related in terms of one being adjustable and one being topical. And in this case, again, it was the appellant's burden to actually show that, and they failed to do so as the board noted in this case. And I was certainly glad to address questions regarding that, but I think it's quite clear that adjustability and topical products are not related in this case, other than the fact that they're both sold to people that are looking for goods for babies. Are you contending that if they're in different classes, that almost per se means they're not related? It's not that they're not related. Something could be related, even if it is in a different class. There is case law specifically that says that the classification number is an administrative function, and it's not to be seen as something that makes a determination as to relationship or not. It's actually based upon the actual goods themselves. And in this case, since the appellant's seeking to make the cancellation in this case, and so it has to be something where they establish that the actual goods themselves, in this case, dealing with things like shampoo, are related to tea. I asked you earlier whether the board concluded that the evidence about these companies with what they call umbrella brands, where there's companies that have goods, you know, use the same trademark to cover goods in both fields. I asked you, I said, didn't the board find that irrelevant? And you said, no. But how am I to understand, this is on page 836, it says, Dr. Kim's contention that baby bath care and lotion products and Medicaid teas are a good fit for umbrella branding is irrelevant and tells us nothing whether petitioner specifically has current technology or know how to produce medical teas. I mean, above that, it's talking about the prevalence of umbrella brands in this market, i.e. baby care and child care products that have fall in both categories. Why is that not a finding that this kind of evidence is irrelevant? Well, if you look at the way that the board analyzed that, first of all, they went through that those statements were not based upon fact or that the actual witness in this case provided evidence to where that information came from. Secondly, it's a situation where they did not establish all the required factors to deal with that. And umbrella branding is dealing with the natural zone of expansion. I don't think they were using umbrella branding to mean zone of expansion. I think it was a separate argument. And we have case law that says that it can be considered relevant evidence outside of the natural zone of expansion doctrine. The way that I see it is the way that the board found in this case is that they were addressing that the appellant was not saying natural zone of expansion. The appellant was saying umbrella branding and they made the actual finding. In other words, that that's what they made the analysis of. That's what they were referring to when they said umbrella branding that they were referring to a natural zone of expansion when they went through those factors. That's how I read it wrong. All right, counsel, anything further? I'll just say briefly, again, I think it comes down to in this case that there is substantial evidence to support the board's finding. And if this honorable court finds that there is substantial evidence that the ruling should be left alone and be seen as conclusory. And finally, that it is the appellant that has a burden in this case and it's not met their burden in terms of the actual thing, in terms of the actual trademarks themselves. It establishes a similarity and in terms of the actual goods themselves. I thank the honorable court for its time and I'm certainly glad to answer any other questions. Okay, thank you, Mr. Hernandez. You have some rebuttal time. Thank you, your honors. I'd like to touch on a couple of points. First, as my friend on the opposing side conceded, the trade channels are overlapped. They are related. There's evidence in the record supporting this. So that brings us to three factors that weigh in favor of confusion. Now, I'd like to clarify my friend's statements that the board found baby magic is weak. That's not correct. When the board was analyzing the spectrum of fame, it concluded that conceptually it appeared it was weak, which narrowed that fame scope. It brought it back to the middle of the spectrum. It does not impact the similarity of the marks. Further, RECOT, again, supports this. It doesn't matter how much fame is present. As long as fame is present, it must be weighed and it must weigh in favor of the senior user. And then concerning the relatedness of the goods, there was some discussion about the evidence of third parties. Again, this is the exact type of evidence that this court considered extremely pertinent. Accordingly, it should have been considered. Do you think that that argument and that evidence just related to natural zone of expansion, that seems to be what your adversary is suggesting? No, Your Honor. And in the board's opinion... Yeah, go ahead. I'm sorry. In the board's opinion, it acknowledged that, it cited RECOT, in fact, that evidence is pertinent to the source, the origin of the goods. So it's not just related to natural zone expansion. It's related to the origin of the goods. All right. Any further? I have one last question for you. Can you speak to appendix page 24, where the discussion is about the fact that said Baby Magic Mark has not clearly shown that Baby Magic Mark is commercially strong, let alone famous. It's at the bottom of appendix 24. Right, Your Honor. So that discussion pertains to how much fame Baby Magic has. Now, the board, based on the evidence, which for the purposes of this appeal, we accept. But the board, based on the evidence of RECOT, determined that it wasn't on the highest end of the spectrum. It wasn't commercially strong to have that high end of spectrum fame. Instead, based on the evidence of RECOT, it fell in the middle of that spectrum. That's what the board was saying for that sentence. And you said just a few minutes ago that you said three factors support you. Could you just sum up, and maybe this is your last word, what those three factors are? Right, Your Honor. So it's undisputed that the marks are confusingly similar. That's the first factor. Second, Baby Magic has a level of fame. That factor must be weighed in favor of Matera. That's two factors. Three, the channels of trade overlap. The evidence demonstrate this. That's three factors. And then fourth, at worst, the relatedness of the goods is neutral. Again, based on the evidence that the board ignored. If there are no further questions, I'll yield the rest of my reply. Okay, I thank both counsel. This case is taken under submission.